# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CHARLES W.[1],                                                     Case No. 2:22-cv-03226
    Plaintiff,                                           Litkovitz, M.J.

vs.

COMMISSIONER OF                                **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Charles W. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply. (Doc. 18).

## I. Procedural Background

Plaintiff protectively filed his applications for DIB and SSI on February 17, 2015, alleging disability since January 10, 2014, due to adrenal insufficiency, thyroid problems, testosterone problems, pituitary gland problems, hip pain, a seizure disorder, right arm numbness, and right shoulder pain. (Tr. 7, 429). The applications were denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Thomas L. Wang on July 26, 2017. (Doc. 14 at PAGEID 2081-135 (Supplemental Certified Administrative Record)). Plaintiff and a vocational expert (VE) appeared telephonically

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

and testified at the ALJ hearing. (*Id.*). On March 13, 2018, ALJ Wang issued a decision denying plaintiff's applications. (Tr. 129-45). After vacating their initial denial, the Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings. (Tr. 152-66.)

On remand, the claim was assigned to ALJ Deborah F. Sanders. After a telephone hearing held on October 26, 2020 (Tr. 21-59), the ALJ issued a decision again denying plaintiff's applications on December 2, 2020. (Tr. 205-27). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 22, 2022. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2019.

2. [Plaintiff] has not engaged in substantial gainful activity since January 10, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: history of cerebellar astrocytoma, seizure disorder, degenerative disc disease of the lumbar spine

    with radiculopathy, bilateral trochanteric bursitis, bilateral carpal tunnel syndrome (mild), and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [ALJ Sanders] find[s] that [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [plaintiff]'s ability to push and pull is limited as per the exertional weight limits and to the occasional level; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs; can frequently balance, stoop, kneel, crouch, and crawl; cannot perform commercial driving; can frequently reach forward and laterally, handle, and finger; can occasionally work in environments where the temperatures are less than 40 degrees, and the noise level is no greater than three; and cannot use hazardous machinery or be exposed to unprotected heights. Mentally, [plaintiff] can perform work limited to simple, routine, and repetitive short cycled tasks.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. [Plaintiff] was born . . . [in] 1982 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

---

[2] Plaintiff's past relevant work was as a carpenter, a skilled, medium (heavy as performed) position. (Tr. 53, 225).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations in the national economy such as document preparer (25,000 jobs); order clerk (15,000 jobs); and dowel inspector (12,000 jobs). (Tr. 54-55, 225-26).

> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 10, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 211-26).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors

On appeal, plaintiff raises a single assignment of error—that the ALJ[4] failed to properly evaluate the opinion of Patricia Scholl, FNP, regarding plaintiff's mental health impairments[5] (Tr. 711-13). While plaintiff concedes that Ms. Scholl was not an acceptable medical source under applicable regulations, he argues that the ALJ was nevertheless required to evaluate her opinion as set forth in Social Security Regulation (SSR)[6] 06-3p, 2006 WL 2329939 (Aug. 9, 2006).[7] Plaintiff further concedes that the ALJ attempted such an evaluation but, in doing so, grossly misrepresented the record.

The Commissioner argues in response that the ALJ properly evaluated Ms. Scholl's opinion according to the factors set forth in 20 C.F.R. § 404.1527(c),[8] which is applicable to claims—like here—filed prior to March 27, 2017. The Commissioner argues that the ALJ did not misrepresent the record, and plaintiff invites the Court to impermissibly reweigh the evidence in his favor.[9]

---

[4] References to "ALJ" hereafter refer to ALJ Sanders.
[5] Plaintiff does not raise any argument related to his physical impairments (*see* Doc. 13 at PAGEID 2068 ("[W]e will focus on [plaintiff's] mental health impairments. . . .") and PAGEID 2070, 2074-75 (discussing only Ms. Scholl's opinions regarding plaintiff's mental impairments and not her separate opinion regarding his physical impairments)), and any such arguments are therefore deemed waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).
[6] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).
[7] SSR 06-03p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).
[8] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.
[9] The Commissioner devotes portions of her brief to the ALJ's evaluation of plaintiff's subjective symptoms, the

In reply, plaintiff argues that the Court should assign greater weight the fact that Ms. Scholl is the only source in the record that had a longitudinal relationship with plaintiff related to his mental impairments. Plaintiff also argues that only two of the records the ALJ referenced in her discussion of the supportability and consistency factors were from mental health visits; plaintiff argues that the ALJ gave undue weight to the other referenced records, which were from visits for physical impairments.

For claims filed prior to March 27, 2017, only "acceptable medical sources" as defined under former 20 C.F.R. § 404.1513(a)[10] can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *2. Information from "other sources" cannot establish the existence of a medically determinable impairment, but information they give "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* Their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. A certified nurse practitioner like Ms. Scholl is not an "acceptable medical source" under former § 404.1513, but instead she is a "medical source" who falls into the category of "other source." 20 C.F.R. § 404.1513(d)(1); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (nurse practitioners are "[m]edical sources who are not 'acceptable medical sources'").

---

opinions of the state agency reviewers, and Ms. Scholl's opinion regarding plaintiff's physical impairments. (*See* Doc. 17 at PAGEID 2143-49). Because plaintiff's single statement of error relates solely to Ms. Scholl's opinion on his mental impairments, the Court finds it unnecessary to address these arguments.

[10] Section 404.1513 was amended effective March 27, 2017. The prior version of § 404.1513 applies to plaintiff's claims filed in 2015.

7

The same factors that apply to the evaluation of medical opinions from "acceptable medical sources" apply to opinion evidence provided by "other sources." *Id.* at *4 ("Although the factors in 20 CFR 404.1527(d)[11] . . . explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.'"). Factors to be considered in evaluating opinions from "other sources" who have seen the claimant in their professional capacities include how long the source has known the individual; how frequently the source has seen the individual; how consistent the opinion of the source is with other evidence; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other factors that tend to support or refute the opinion. *Id.* at *4-5. *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). Not every factor will apply in every case. SSR 06-03p, 2006 WL 2329939, *5. The ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6.

In August 2016, Ms. Scholl completed a "Medical Source Statement as to Ability to Perform Work Related Activities (Mental)." (Tr. 711-13). Ms. Scholl opined that plaintiff would be moderately limited in his ability to respond appropriately to co-workers or peers; relate to the general public and maintain socially appropriate behavior; and maintain personal appearance and hygiene. (Tr. 711-12). Ms. Scholl opined that plaintiff would be markedly limited in his ability

---

[11] "[T]he 'treating physician rule' regulations were renumbered 20 C.F.R. §§ 404.1527(c), 416.927(c)." *Gilbert v. Comm'r of Soc. Sec.*, No. 15-11325, 2016 WL 4072476, at *2 (E.D. Mich. Aug. 1, 2016).

8

to accept instruction from or respond appropriately to criticism from supervisors or superiors; work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes; process subjective information accurately and use appropriate judgment; carry through instructions and complete tasks independently; and be aware of normal hazards and take necessary precautions. (*Id.*). Ms. Scholl opined that plaintiff would be extremely limited in his ability to perform and complete work tasks in a normal workday or work week at a consistent pace; work in cooperation with or in proximity to others without being distracted by them; maintain attention and concentration for more than brief periods of time; perform at production levels expected by most employers; respond appropriately to changes in work setting; remember locations, workday procedures, and instructions; behave predictably, reliably, and in an emotionally stable manner; and tolerate customary work pressures. (Tr. 712-13). Ms. Scholl concluded that plaintiff would likely be absent from work more than five days per month and his condition would likely deteriorate if placed under the stress of an eight hours per day, five days per week job. (Tr. 713). Ms. Scholl noted that plaintiff functioned at his own pace and if pressured to work harder, he became stressed and angered easily. (*Id.*).

The ALJ gave Ms. Scholl's opinion on plaintiff's mental impairments "little weight." (Tr. 224). The ALJ explained:

> The mental medical source statement of Patricia Scholl[], M.S.N., C.N.P., is given little weight because it is inconsistent with the medical evidence of record; per [plaintiff]'s testimony, she only saw him two to three times, thus she has a limited longitudinal relationship with [plaintiff]; and she is not an acceptable medical source, as she is a family nurse practitioner [Tr. 711-13]. The extreme nature of the limitations are not supported by the medical evidence of record, as most mental status examinations generally show a normal mood and affect [Tr. 705, 709, 742, 772, 775, 823, 845, 878, 885, 893-95]. Additionally, the mostly marked

> to extreme limitations that she provided are not consistent with the evidence, as the record shows no more than mild to moderate limitations, as evidenced by the infrequency of his symptoms and his adequate response to treatment (See, e.g., [Tr. 699]). Furthermore, Ms. Scholl[] is not only a non-acceptable medical source; she does not specialize in mental health. Therefore, Ms. Scholl[]'[s] opinion is given little weight.

(*Id.*).

The Court concludes that the ALJ's decision regarding Ms. Scholl's mental health statement is based on substantial evidence. The ALJ highlighted the "limited longitudinal relationship" of only two to three visits between Ms. Scholl and plaintiff. (*Id.*). *See* 20 C.F.R. §§ 404.1527(c)(1) and (2). Plaintiff argues that this relationship should weigh in plaintiff's favor because Ms. Scholl was the "only source of record who provided an opinion and had the opportunity to observe [plaintiff,]" but this argument invites the Court to reweigh evidence. *See Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-cv-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("[T]he Court is charged with determining the sufficiency of the evidence, not its weight.") (quoting *Thomas v. Comm'r of Soc. Sec.*, 2014 WL 2114567, *16 (N.D. Ohio May 20, 2014)), *report and recommendation adopted*, No. 2:15-cv-3015, 2017 WL 1034583 (S.D. Ohio Mar. 16, 2017). The ALJ also noted that Ms. Scholl did not have a mental health specialty. (Tr. 224). *See* 20 C.F.R. § 404.1527(c)(5).

The ALJ considered whether Ms. Scholl's opinion was supported by her own treatment records. *See* 20 C.F.R. § 404.1527(c)(3). The ALJ cited an April 2016 progress note in which Ms. Scholl noted: "cooperative with exam, mood happy and calm/affect appropriate, fair eye contact, speech clear" and "[P]t is off medication Clonazepam, doing well. Feels more energy." (Tr. 224, referring to Tr. 709). The ALJ cited a June 2016 progress note in which Ms. Scholl

noted: "cooperative with exam, mood happy and calm/affect appropriate, fair eye contact, speech clear." (*Id.*, referring to Tr. 705). The ALJ cited a July 2016 progress note in which Ms. Scholl recorded plaintiff's report that his depression was "doing good." (*Id.*, referring to Tr. 699).

The ALJ also discussed the consistency of Ms. Scholl's statement with other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4). The ALJ referred to an April 2015 endocrinology visit record, in which plaintiff "denie[d] depression, anxiety." (*Id.*, referring to Tr. 742; *see also id.*, referring to 878 (plaintiff denied "mental disturbances" at a February 2017 endocrinology follow up)). The ALJ referred to a September 2015 emergency department record related to plaintiff's seizures in which the physician noted "normal mental status." (*Id.*, referring to Tr. 775). The ALJ referred to a November 2015 record from an emergency visit for foot pain, in which plaintiff reported no psychiatric symptoms. (*Id.*, referring to Tr. 823). The ALJ referred to a June 2016 emergency visit for seizures, during which plaintiff presented with normal mood, affect, and behavior. (*Id.*, referring to Tr. 845). The ALJ referred to a mental status examination performed in November 2015, in which plaintiff's mental status was found unremarkable with respect to his appearance, behavior, and thinking, with the exception of some recent memory loss due to chemotherapy for brain cancer. (*Id.*, referring to Try 885-86). Finally, the ALJ referred to a mental status examination performed in March 2017, in which plaintiff's mental status was found largely unremarkable with respect to appearance, behavior, and thinking, with the exception of "depression/sadness" in terms of affect and mood and impaired recent memory. (*Id.*, referring to 893-95).

Plaintiff argues that the ALJ mischaracterized the record regarding plaintiff's mental health impairments. As support for this position, plaintiff points to portions of the November 2015 mental health assessment (Tr. 887); a January 2016 neuropsychology report (Tr. 685-86); the July 2016 visit with Ms. Scholl (Tr. 694); a September 2016 counseling session (Tr. 905); the March 2017 mental health assessment (Tr. 895-96); September 2017, June 2018, and July 2018 psychotherapy sessions (Tr. 1396, 1402, and 1405); and an August 2019 neuropsychology report (Tr. 1572-74), which he argues are consistent with more severe mental health impairments. But in the ALJ's discussion of severe and non-severe impairments earlier in her decision, she explicitly considered several of these records along with several others reflecting more severe mental health impairments. (*See* Tr. 212, referring to plaintiff's major depressive episode in January 2016 (Tr. 685 (January 2016 neuropsychology report)) and reported depressed mood, hopelessness, occasional suicidal ideation, low motivation, and excessive worrying (Tr. 694 (July 2016 Ms. Scholl record); Tr. 704 (June 2016 Ms. Scholl record)); Tr. 723 (September 2016 endocrinology follow up); Tr. 885-86 (November 2016 mental health assessment); Tr. 905 (September 2016 counseling session); and Tr. 974 (neuro-oncology follow up)).

Nevertheless, the ALJ concluded that plaintiff's depression was not severe because counseling and medication were helpful (*id.*, referring, e.g., to Tr. 684 and 974 (plaintiff's reports that counseling was helpful in January and July 2016)); plaintiff denied suffering from depression on multiple occasions (*id.*, referring, e.g., to Tr. 707-08 (plaintiff's reports of feeling better, no hopelessness, and a "pretty good" mood in April 2016) and Tr. 1178 (plaintiff denied depression in May 2017)); and plaintiff had generally unremarkable mental status examinations

12

with normal mood and affect (*id.*, referring to Tr. 638 (March 2015 Ms. Scholl record); Tr. 773 (May 2015 emergency visit record for leg, abdominal, and back pain); Tr. 698 (July 2016 Ms. Scholl record); Tr. 774 (September 2015 emergency visit record for seizures); and Tr. 1145 (June 2017 visit for hip pain)). Finally, the ALJ noted that plaintiff had not demonstrated optimal effort during the January 2016 neuropsychological evaluation highlighted by plaintiff. (Tr. 213, referring to Tr. 685 (report) and Tr. 1925 (May 2020 note from Dr. Dawson explaining the suboptimal effort that she observed and summarizing plaintiff's report that his depression had been better until the pandemic)).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because she relied on "various physical exams with a singular 'psychological' section that is marked without any sort of mental status examination." (Doc. 13 at PAGEID 2075). Similarly, in reply, plaintiff argues that the ALJ cited medical records not specifically related to plaintiff's mental health to support her decision regarding Ms. Scholl's opinion. Plaintiff is correct that some of the records cited by the ALJ characterized as "mental status examinations" were actually psychiatric findings from a "review of systems" or ER physician observations and not a formal mental status examination.[12] (*See* Tr. 224 (the ALJ's references to Tr. 705, 709, 845, 885, and 893-95 are

---

[12] As explained in *Kornecky v. Comm'r of Soc. Sec.*:

> [A] comprehensive mental status examination "generally includes a narrative description of [the claimant's] appearance, behavior, and speech; thought process (e.g., loosening of associations); thought content (e.g., delusions); perceptual abnormalities (e.g., hallucinations); mood and affect (e.g., depression, mania); sensorium and cognition (e.g., orientation, recall, memory, concentration, fund of information, and intelligence); and judgment and insight."

167 F. App'x 496, 508-09 (6th Cir. 2006) (quoting former 20 C.F.R. part 404, subpart P, app. 1, § 12.00(D)(4)) (alteration in original). *See also* David C. Martin, Clinical Methods: The History, Physical, and Laboratory, ch. 207 (Walker HK, et al. eds., 3d ed. 1990), *available at* https://www.ncbi.nlm.nih.gov/books/NBK320/ [https://perma.cc/S2TG-CXFJ].

mental status examinations, while the ALJ's references to Tr. 742, 772, 775, 823 and 878 are not)). Plaintiff does not point to authority for the proposition, however, that an ALJ errs by considering mental health findings noted during either physical exams or non-mental health visits. In addition, the ALJ cited non-mental health visit records reflecting both greater mental impairment (*see* Tr. 212, referring to Tr. 723 (endocrinology) and Tr. 974 (neuro-oncology)) and less mental impairment (*see, e.g.*, *id.*, referring to Tr. 773 (emergency) and Tr. 1145 (hip pain)).

The Court concludes that the ALJ adequately explained her reasons for assigning "little weight" to Ms. Scholl's opinion on plaintiff's mental impairments. (Tr. 224). *See* SSR 06-03p, 2006 WL 2329939, *6. The ALJ's decision in this respect is therefore supported by substantial evidence.

**IT IS THEREFORE ORDERED THAT:**

Based on the foregoing, plaintiff's Statement of Errors (Doc. 13) is **OVERRULED,** and the Commissioner's non-disability finding is **AFFIRMED. IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 6/22/2023

Karen L. Litkovitz
Chief United States Magistrate Judge